DENNIS, Justice,
dissenting.
I respectfully dissent.
The “joint venture” agreement indicated that the bonuses at issue were paid to the employees “in appreciation for loyal service and to provide security to certain deserving *1019 employees.” The letter by which the employees were invited to join in the program stated that the company’s participation in the program “is one way we have to show our appreciation of your loyal service.” Each year that bonuses were paid, they were reported as wages paid to the recipient employee that year on the employee’s W-2 form, as required by the Internal Revenue Code and the rules and regulations of the IRS. The bonuses were paid to the employee by Cahn, rather than being directly contributed to the program, and were contributed by the employee to the program pursuant to the agreement. The majority holds that these payments were not wages within the purview of La.R.S. 23:634,[1] and states that plaintiff’s argument defines wages too broadly. Instead, it appears that the majority defines “wages” too narrowly. In Morse v. J. Ray McDermott & Co., 344 So.2d 1353 (La.1977),[2] we observed that La.R.S. 23:634 applies “literally only to wages payable under written contracts of employment,” but added that “the public policy so expressed includes, within its prohibitory scope, forfeiture and non-vesting clauses such as the present, insofar as they permit an employer’s unilateral act, ... to cause forfeiture or to prevent vesting of deferred compensation credits otherwise earned by the employee.” 344 So.2d at 1359. Our reference to the unilateral act of the employer was necessitated by the facts of the case, the employer in Morse having fired the employee, but our observation of the scope of the policy of La.R.S. 23:634 must be equally true whether the employee is fired or resigns, since the statute expressly contemplates both situations. See footnote one. In Morse, we also noted the passage of La.R.S. 23:640, which includes within the definition of “wages” pensions, and other fringe benefits payable under collective bargaining agreements, and stated that the enactment of that statute; “[i]f anything, ... indicates that the legislature does consider fringe benefits wages within the meaning of La.R.S. 23:634.” Our opinion on rehearing in Morse repudiates that statement insofar as retirement plans such as that at issue in Morse are concerned, but such a retirement plan is not at issue herein.[3] The majority’s discussion of Cahn’s principal and supplemental motives for paying the bonuses to its employees is speculation at best, but more importantly, this discussion misses the issue. Our task is to determine whether the bonuses paid by defendant are “wages” within the meaning of La.R.S. 23:634, and in so doing the arguable motives of the defendant can be considered but should not control. The most significant factor in our consideration should be the strong policy of the statute against forfeiture or non-vesting clauses noted in Morse. The strength of this policy compels the inclusion within its scope of any benefit earned by the employee and transferred to him during the period of employment. That the defendant in this
*1020 case so transferred the bonuses to its employee for its own taxation advantage should not have the significance to our inquiry which the majority gives it. It seems undeniable that at least one motive for the payment of these bonuses to defendant’s employees was to compensate them for service to defendant in key positions. The presence of a motive to compensate, even if arguably not the principal motive, should bring the benefit within the scope of La.R.S. 23:634 when such motive is combined with the strong policy of the statute.

. La.R.S. 23:634 provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

. Rehearing was granted in Morse for reconsideration of our original position with respect to the retirement plan there at issue; the rest of our original opinion remains viable. "Moreover, all that wé said in our original opinion is correct and applicable to the controverted provisions of the supplemental compensation plan.” 344 So.2d at 1368.

. In discussing the retirement plan in Morse on rehearing, we noted that under the plan,
There is no awarding, or setting aside, in the years of employment, of any sum to the credit of the employee. There is not even a promise, or a statement, that the employee has "earned" anything in the retirement plan during his first fourteen years of company service. The specific provisions of the plan inform the employee otherwise.
344 So.2d at 1369.
In contrast, the employee herein was paid a stated sum by check. The terms of the joint venture agreement, reiterated in the letter inviting the employee to participate in the program, informed the employee that the bonus was paid at least in part "in appreciation for loyal service."